# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**JUANITA RYAN,**

        **Plaintiff,**

        **v.**                            **Case No.  05-2213-JWL**

**SHAWNEE MISSION U.S.D. 512 and
DIANE HANSEN, individually and in her
official capacity,**

        **Defendants.**

_____

## MEMORANDUM AND ORDER

Plaintiff Juanita Ryan was formerly the East Area Coordinator, Occupational and Physical Therapy Supervisor with the defendant Shawnee Mission U.S.D. 512.  She asserts claims against the school district and her former supervisor, Diane Hansen, for retaliation and wrongful termination.  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for a violation of her First Amendment free speech rights, and also for violations of § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. § 794, and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400-1487.  This matter is currently before the court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 40) for failure to state a claim upon which relief can be granted.  For the reasons explained below, the court will grant the motion with respect to certain aspects of plaintiff's § 1983 claim against defendant Hansen and also with respect to plaintiff's IDEA claim in its entirety.  The court will deny the

motion with respect to the remaining aspects of plaintiff's § 1983 claim and also with respect to her Rehabilitation Act claim.

## BACKGROUND[1]

According to the allegations in plaintiff's first amended complaint, plaintiff was employed by the school district as a physical therapist from August of 1999 through June of 2004. During that time, she "engaged in the protected activity of asserting [the] School District was not complying with federal and state statutes and regulations regarding services to disabled children." First Am. Compl. (Doc. 35), ¶ 9, at 3. According to plaintiff, she told her supervisor, Diane Hansen, and various other individuals that noncredentialed personnel who were directed to perform physical therapy activities were not being supervised as required by state and federal rules, regulations, and laws; that plaintiff was asked to provide physical therapy treatment to a child who did not have a doctor's referral, which was contrary to state rules and regulations; that paraprofessionals were allowed to provide Individualized Education Program (IEP) services, which was contrary to state rules and regulations; that assistive technology devices and proper safety equipment were not always available for students in contradiction to state and federal rules, regulations, and laws; and that school personnel were uncooperative and were a barrier to plaintiff's ability to perform her duties as outlined in

---

[1] Consistent with the well established standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court accepts as true all well pleaded factual allegations in plaintiff's first amended complaint.

2

various student IEPs.   In the fall of 2003, Kevin Riordan, a physical therapist with the school district, told Ms. Hansen that plaintiff had reported various violations of state and federal special education statutes to a Kansas governmental agency.

On May 5, 2004, Ms. Hansen told plaintiff that the schools where plaintiff worked had requested that she not be returned to those schools, a statement which Ms. Hansen allegedly knew was false.   Ms. Hansen also told plaintiff that there were no longer any schools for which plaintiff was qualified.   Ms. Hansen essentially forced plaintiff to give her resignation. Plaintiff alleges that Ms. Hansen's actions were taken in retaliation for plaintiff's attempts to vindicate the rights of disabled school children.

Plaintiff now asserts three claims against the school district and Ms. Hansen in her individual and official capacity.   Count I is a claim against the school district and Ms. Hansen pursuant to 42 U.S.C. § 1983 for allegedly retaliating against plaintiff for exercising her free speech rights under the First Amendment.   Counts II and III are claims against the school district for violations of the Rehabilitation Act and the IDEA.   Defendants ask the court to dismiss all of plaintiff's claims against them.

## MOTION TO DISMISS STANDARD

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive,

*Neitzke v. Williams*, 490 U.S. 319, 326 (1989).   The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff.   *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001).   The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted).


## DISCUSSION

For the reasons explained below, the court finds that plaintiff's first amended complaint contains allegations sufficient to withstand defendants' motion to dismiss with respect to plaintiff's § 1983 First Amendment retaliation claim except for certain aspects of that claim against defendant Hansen.   It also contains allegations sufficient to state a claim for a violation of the Rehabilitation Act.   But, plaintiff's IDEA claim must be dismissed because only disabled children and their parents can bring a private right of action under the IDEA.[2]

**A.      § 1983 First Amendment Retaliation Claim**

---

[2] Plaintiff contends that defendants waived the right to file the current Rule 12(b)(6) motion because they previously filed a Rule 12(b)(6) motion.   Although defendants' current motion is a second Rule 12(b)(6) motion, defendants' first Rule 12(b)(6) motion was directed at plaintiff's original complaint whereas the current motion is directed at plaintiff's first amended complaint.   Because defendant's current Rule 12(b)(6) motion is the first such motion with respect to plaintiff's first amended complaint, the rules barring subsequent Rule 12(b)(6) motions are not implicated here.

A public employer may not retaliate against an employee for exercising his or her constitutionally protected right of free speech. *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003). The court applies a four-part test when evaluating a constitutional claim for First Amendment retaliation. In this case, defendants' argument focuses on the first step of this four-part analysis and therefore the court will confine its analysis accordingly. At step one, the court must determine whether the employee's speech involves a matter of public concern. *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998). A matter of public concern is one which is of interest to the community, whether for social, political, or other reasons. *Id.* at 1202. "Matters solely of interest to government employees . . . are not protected by the First Amendment." *Id.* Consequently, "speech related to internal personnel disputes ordinarily does not involve public concern" whereas "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of . . . officials . . . clearly concerns matters of public import." *Id.* (quotation omitted). In assessing whether speech is protected, the court "must consider the 'content, form and context of a given statement, as revealed by the whole record.'" *Id.* (quoting *Connick*, 461 U.S. at 147).

Defendants contend that plaintiff's allegations involve speech that relates to personal employment issues, not matters of public concern. But in order to make this determination the court would need to know more about the content, form, and context of plaintiff's statements in order to evaluate whether they involved internal personnel disputes or matters of public concern. *See Hulen*, 322 F.3d at 1237 ("In evaluating this type of claim, it is

5

essential to identify the speech which resulted in the alleged retaliation."). Of course, on a motion to dismiss the court must view all reasonable inferences in plaintiff's favor. Viewed as such, it appears that plaintiff's complaints generally pertained to the school district's alleged failure to provide disabled students with services as required by state and federal rules, regulations, and laws. The court certainly cannot say that plaintiff can prove no set of facts under which those types of complaints would involve matters of public concern. *See Denton v. Morgan*, 136 F.3d 1038, 1042-43 (5th Cir. 1998) (juvenile probation officers' letter to state agency which reported perceived wrongdoing by school district in denying educational services to disabled juvenile involved matter of public concern). Thus, plaintiff's complaint adequately alleges that she engaged in constitutionally protected speech involving matters of public concern.

Defendants also contend that the claim against the school district should be dismissed because plaintiff does not allege that Ms. Hansen acted in conformity with an official policy, custom, or practice of the school district. Defendants are correct that plaintiff must identify an official policy, custom, or practice that caused plaintiff's injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978). But plaintiff's first amended complaint contains such an allegation. It alleges that the school district, "acting through Hansen and other employees, had a policy or custom of bullying individuals into acquiescing to violations of state and federal statutes pertaining to special education requirements." First Am. Compl. (Doc. 35), ¶ 31, at 6. Defendants focus too heavily on another allegation in plaintiff's complaint which alleges that Ms. Hansen's actions were "beyond the scope of her authority."

6

*Id.* ¶ 25, at 5.  A plaintiff, of course, may plead alternative theories of liability.  In this case, plaintiff's complaint contains allegations sufficient to place defendants on notice of the official policy or custom which plaintiff alleges caused her injury.  As such, plaintiff's complaint adequately states a claim against the school district.

Defendants contend that plaintiff's § 1983 claim against Ms. Hansen in her official capacity should be dismissed because it is essentially duplicative of her claim against the school district.  Defendants also urge the court to dismiss the aspect of plaintiff's § 1983 individual capacity claim against Ms. Hansen in which plaintiff seeks reinstatement on the grounds that Ms. Hansen was not plaintiff's employer.  Plaintiff states that she agrees with both of these arguments.  Therefore, the court will grant as unopposed defendants' motion to dismiss with respect to plaintiff's § 1983 official capacity claim against Ms. Hansen and also with respect to plaintiff's § 1983 individual capacity claim against Ms. Hansen insofar as plaintiff is seeking reinstatement.

**B.     Rehabilitation Act Claim**

Defendants ask the court to dismiss plaintiff's Rehabilitation Act claim on the grounds that plaintiff does not allege that she is a qualified individual with a disability because, they contend, the Rehabilitation Act does not apply to a non-covered person asserting a retaliation claim.  In other words, they argue that plaintiff cannot state a claim under the Rehabilitation Act on the grounds that she was subjected to retaliation for complaining of disability discrimination of others.  The court disagrees.

7

In *Jackson v. Birmingham Board of Education*, 125 S. Ct. 1497 (2005), a teacher brought a claim against a school district alleging that the school district's retaliation against him for complaining about sex discrimination in the high school's athletic program was actionable under Title IX of the Education Amendments Act of 1972, as amended, 20 U.S.C. § 1681 *et seq.*   The Supreme Court held that these allegations stated a claim under Title IX. The Court pointed out that Title IX "broadly prohibits a funding recipient from subjecting any person to 'discrimination' 'on the basis of sex'" and that retaliation "is a form of 'discrimination' because the complainant is being subjected to differential treatment." *Jackson*, 125 S. Ct. at 1504 (quoting 20 U.S.C. § 1681).   Although the retaliation claim at issue in *Jackson* was a sex discrimination claim under Title IX and the retaliation claim at issue in this case is a disability discrimination claim under the Rehabilitation Act, the relevant statutory text of Title IX and the Rehabilitation Act is materially indistinguishable.   Title IX provides as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681.  The Rehabilitation Act similarly provides as follows:

> No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  The only meaningful distinction between the two statutes is that Title IX prohibits discrimination based on sex whereas the Rehabilitation Act prohibits discrimination

based on disability.    Thus, the court finds no principled distinction between the Supreme

Court's holding in *Jackson* and similar claims under the Rehabilitation Act.

Moreover, any such distinction would be contrary to the synonymous purposes of the

statutes.  Both statutes were patterned after Title VI of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000d, which "is framed the same way except that it refers to race, color or national origin."

*Pushkin v. Regents of Univ. of Colo.*, 658 F.2d 1372, 1379 (10th Cir. 1981).  Title IX "has

the same qualities [as Title VI], although it refers to discrimination based on sex as its object

whereas in § 504 [of the Rehabilitation Act] the reference is to otherwise qualified

handicapped individuals."[3]    *Id.*    The Tenth Circuit has recognized that Title VI, the

Rehabilitation Act, and Title IX

> were all created to provide mandatory substantive rights to private citizens
> subject to discrimination on the basis of race, color, national origin, sex or
> handicap.  In order to enforce those rights Congress has prohibited the use of
> federal resources to support discriminatory practices, and has provided
> individual citizens with private remedies to overcome the discrimination.

*Id.* at 1380.    Thus, the court finds no principled reason to distinguish between the

Rehabilitation Act's prohibition on discrimination against individuals with disabilities from

Title IX's prohibition on discrimination on the basis of sex.    Accordingly, plaintiff's claim that

the school district retaliated against her for complaining about disability discrimination in the

school's programs is actionable under the Rehabilitation Act.

---

[3] The Rehabilitation Act originally used the term "handicapped individual" and was later
amended to use the term "individual with a disability."

Defendants nonetheless contend that plaintiff does not allege that she did anything to vindicate the rights of any unidentified disabled school children or that any of the unidentified disabled school children are covered by the Rehabilitation Act.   Admittedly, plaintiff's first amended complaint does not expressly allege as much but, again, the court must view all reasonable inferences from plaintiff's allegations in her favor.   Viewed as such, the thrust of her allegations is that defendants retaliated against her for voicing concerns about the adequacy of the school district's programs with respect to students with disabilities.   The court cannot say that plaintiff can prove no set of facts which would entitle her to relief on this theory and her allegations give defendants adequate notice of the nature of her claims against them, which is all that is required at this procedural juncture.

Defendants contend that plaintiff's claim should be dismissed because she does not allege that the school district received federal financial assistance.   The court might be willing to embrace such an argument if it were not quite so obvious that the defendant is a recipient of federal financial assistance.   *Cf. Butler v. Capitol Fed. Sav.*, 904 F. Supp. 1230, 1233 (D. Kan. 1995) (dismissing Title VI claim where plaintiff did not adequately allege that the defendant bank was a recipient of federal funding).   In this case, however, the defendant is a public school district and it is generally accepted that public schools are typically recipients of federal funds.   Therefore, the court will not require such precise pleading.   Of course, the court is not foreclosing the possibility that the school district in fact may not be a recipient of federal funding.   If the court is wrong in this supposition, defendants have recourse to rectify this matter by means of a motion for summary judgment.   But the court will not dismiss

plaintiff's Rehabilitation Act claim on this basis where it seems apparent that the missing allegation is simply a technical defect in pleading.

Defendants argue that the court should dismiss plaintiff's Rehabilitation Act claim because plaintiff was required to exhaust her administrative remedies before bringing such a claim. Plaintiff's complaint, however, specifically alleges that she has exhausted all necessary administrative remedies with respect to her Rehabilitation Act claim. First Am. Compl. (Doc. 35) ¶ 33, at 7. This allegation is sufficient to withstand a Rule 12(b)(6) motion. If defendants wish to challenge this allegation on the merits, they may do so by way of a more appropriate procedural vehicle.

Defendants' final argument with respect to plaintiff's Rehabilitation Act claim is that if plaintiff is pursuing a claim under 29 U.S.C. § 794a(a)(2), then her claims for monetary relief and compensatory damages for emotional distress are inappropriate remedies and must be dismissed. Plaintiff's complaint does not, however, specify whether she is asserting a claim under § 794a(a)(1) or (2). Moreover, defendants' reliance on *Pool v. Riverside Health Services, Inc.*, No. 94-1430-PFK, 1995 WL 519129, at *5 (D. Kan. 1995), is misplaced because in *Pool* the plaintiff did not allege an intentional violation of the Rehabilitation Act whereas in this case plaintiff's first amended complaint alleges that Ms. Hansen's actions were intentional. *See* First Am. Compl. ¶¶ 30, at 6; *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1152-53 (10th Cir. 1999) (compensatory damages available under § 504 of the Rehabilitation Act if discrimination is intentional). Thus, the arguments that defendants have raised at this procedural juncture do not establish that it appears beyond a doubt that plaintiff

can prove no set of facts in support of this claim which would entitle her to the relief sought. Of course, defendants are free to raise this argument again at a later date because the court is not definitively resolving the measure of damages applicable to plaintiff's Rehabilitation Act claim; the court is merely rejecting the relatively cursory argument that defendants raised on this point.    Accordingly, defendants' motion to dismiss plaintiff's Rehabilitation Act claim is denied.

**C.    IDEA Claim**

Lastly, defendants contend that the court should dismiss plaintiff's IDEA claim because plaintiff is not among the class of persons that the IDEA was designed to protect.  Defendants point out that plaintiff does not allege that she is a child with a disability, that she is the parent of a child with a disability, or that she is a qualified individual with a disability.  Plaintiff, on the other hand, contends that she is attempting to vindicate the rights of those who are covered by the statute.

The stated purpose of the IDEA is to ensure that all disabled children have available to them a free appropriate public education and, to that end, to protect the rights of disabled children and their parents.  20 U.S.C. § 1400(d)(1)(A), (B).  In furtherance of those purposes, the IDEA grants parents of disabled students a narrow set of procedural rights which includes a parent's right to participate in meetings that evaluate the child's performance, to receive prior written notice whenever the agency proposes a change to the child's IEP, and to participate in due process hearings. *Cavanaugh ex rel. Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 757 (6th Cir. 2005) (citations omitted).    Consistent with this general legal framework,

plaintiff has not cited and this court has not located any case which extends the right to bring a cause of action under the IDEA beyond the disabled child or the child's parents. *See Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (statutory language of IDEA "strongly suggests that Congress intended to provide a private right of action only to disabled children and their parents"); *Cavanaugh ex rel. Cavanaugh*, 409 F.3d at 757 (only the disabled child, not the parents, has the right to bring a cause of action under the IDEA); *Beth V. ex rel. Yvonne V. v. Carroll*, 87 F.3d 80 (3d Cir. 1996) (disabled children and their parents have an express right of action under IDEA); *Piedmont Behavioral Health Center, LLC v. Stewart*, No. 2:04-CV-946, 2006 WL 240410, at *5 (S.D.W. Va. Jan. 31, 2006) (parties with vested financial interest in IDEA procedural safeguards did not have the right to bring an IDEA cause of action because those safeguards exist for disabled children and their parents); *Asbury Park Bd. of Educ. v. Hope Academy Charter Sch.*, 278 F. Supp. 2d 417 (D.N.J. 2003) (IDEA did not afford school district a private right of action; IDEA was enacted to benefit disabled children and their parents); *Va. Office of Prot. & Advocacy v. Va. Dep't of Educ.*, 262 F. Supp. 2d 648, 661 n.5 (E.D. Va. 2003) (advocacy group did not have standing to challenge outcome of due process hearing under the IDEA because only parents of disabled students had standing to bring such challenges). Because plaintiff's complaint does not allege that she is a disabled child or a parent of a disabled child, then, she can prove no set of facts which would entitle her to relief under the IDEA because the IDEA does not provide her with a private right of action. Accordingly, her IDEA claim is dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 40) is granted in part and denied in part as set forth above.

**IT IS SO ORDERED** this 28th day of February, 2005.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

14