**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JUANITA RYAN,**

      **Plaintiff,**

      **v.**                                                                                      **Case No.  05-2213-JWL**

**SHAWNEE MISSION UNIFIED**
**SCHOOL DISTRICT NO. 512 and**
**DIANE HANSEN,**

      **Defendants.**

_____

**MEMORANDUM AND ORDER**

Plaintiff Juanita Ryan was formerly a physical therapist with the defendant Shawnee Mission Unified School District No. 512.  The court previously granted summary judgment on plaintiff's First Amendment retaliation claim and denied summary judgment on her claim against the school district for retaliation in violation of the Rehabilitation Act of 1973 (Rehabilitation Act), 29 U.S.C. §§ 794(a), 794a(a)(2).  *See generally Ryan v. Shawnee Mission Unified Sch. Dist. No. 512*, — F. Supp. 2d —, 2006 WL 1888326, at *1-*27 (D. Kan. July 7, 2006) (publication forthcoming).  This matter is currently before the court on the school district's motion to reconsider the court's denial of summary judgment on

plaintiff's Rehabilitation Act claim (doc. #103).[1] For the reasons explained below, the school district's motion for reconsideration is denied.

## STANDARD FOR A MOTION FOR RECONSIDERATION

A motion seeking reconsideration "shall be based on (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. *Id.* It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing. *Id.*

## DISCUSSION

In this case, the school district urges the court to reconsider its previous ruling denying summary judgment on plaintiff's Rehabilitation Act claim to correct clear error or prevent manifest injustice. The school district's arguments are two-fold: first, that plaintiff was required to (but undisputedly did not) exhaust her administrative remedies before filing suit asserting this claim and, second, that the court should reexamine the aspect of its ruling in which it held that the school district did not meet its initial summary judgment burden of

---

[1] In this motion, the school district sought, in the alternative, an order certifying issues for interlocutory appeal and for a stay pending the outcome of the appeal. The court already denied that aspect of the motion during a telephone conference. *See* Minute Entry (doc. 107).

demonstrating the absence of a genuine issue of material fact regarding whether plaintiff suffered adverse employment action. Having thoroughly considered both arguments, the court finds them both to be without merit. The court will therefore deny the school district's motion for reconsideration.

## I.     **Exhaustion of Administrative Remedies**

The nature of plaintiff's Rehabilitation Act claim is critical to understanding the court's ruling that plaintiff was not required to exhaust her administrative remedies on this claim. Plaintiff was formerly a physical therapist with the school district and, in that capacity, she worked with disabled students. The thrust of her claim is that the school district discriminated against those disabled students, that she voiced her opposition to the discrimination, and that the school district unlawfully retaliated against her for doing so. Her legal theory, then, is that the manner in which the school district treated disabled students constituted a violation of § 504 of the Rehabilitation Act, which provides as follows:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

28 U.S.C. § 794(a). And, furthermore, because the school district unlawfully retaliated against her for voicing her opposition to that discrimination she is entitled to assert a claim under § 505(a)(2) of the Rehabilitation Act, which provides as follows:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.] shall be available to **any person aggrieved** by any act or failure to act by any recipient of Federal

>assistance . . . under section 794 of this title [for a violation of § 504 of the Act].

28 U.S.C. § 794a(a)(2) (emphasis added). In short, plaintiff is asserting a private right of action for retaliation (under § 505(a)(2)) against the school district for its noncompliance with the substantive provision of the Rehabilitation Act (a § 504 violation).[2]

In holding plaintiff was not required to exhaust administrative remedies on this claim, this court explained the distinction between the remedial schemes set forth in the Rehabilitation Act for claims against federal employers versus those against federal funding recipients. *See Ryan*, 2006 WL 1888326, at *19-*20. The court explained that federal employees can assert claims against federal employers pursuant to § 501 of the Act, 28 U.S.C. § 791, and that the remedial scheme for those claims is set forth in § 505(a)(1) of the Act, 28 U.S.C. § 794a(a)(1), which provides for the remedies, procedures, and rights set forth in Title VII. *Id.* Thus, § 505(a)(1) incorporates Title VII's exhaustion requirement for Rehabilitation Act claims against federal employers. *Id.* On the other hand, § 504 of the Act bars disability discrimination in federally funded programs, 28 U.S.C. § 794, and the remedial scheme for those claims is set forth in § 505(a)(2) of the Act, 28 U.S.C. § 794a(a)(2), which provides for the remedies, procedures, and rights set forth in Title VI. *Id.*

---

[2] The court recognizes that this claim is a somewhat novel one in a relatively developing area of the law. But, after careful consideration of the nature of this claim the court believes, as it has twice explained previously, that the viability of this claim is well grounded in the plain language of the statute (set forth above) as well as the Supreme Court's reasoning in *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), in which the Supreme Court construed the analogous Title IX statute to encompass a similar third-party retaliation claim based on sex discrimination (rather than disability discrimination).

4

Because there is no exhaustion requirement for Title VI claims, there is no exhaustion requirement for § 505(a)(2) claims. *Id.* The court concluded that because the school district is a recipient of federal funding, not a federal employer, the applicable remedial scheme is the Title VI scheme prescribed under § 505(a)(2), not the Title VII scheme prescribed under § 505(a)(1). *Id.* Therefore, plaintiff was not required to exhaust her administrative remedies before filing suit. *Id.* The court further noted that, although the school district had not advanced the argument that plaintiff was required to exhaust her administrative remedies under the exhaustion requirement of the Individuals with Disabilities Act (IDEA), 20 U.S.C. § 1415($\ell$), the court had nevertheless considered and ruled out that possibility. *Id.* at *21.

The school district now argues that the court committed clear error by rejecting case law concerning federal employees' Rehabilitation Act claims and instead relying on case law involving non-employees' Rehabilitation Act claims. The school district argues that Congress intended for all employees – regardless of their employer – to exhaust their administrative remedies before filing disability-related discrimination or retaliation claims. Although the school district did not advance this argument previously and although the court did not expressly say so in its prior opinion, the court already considered this possibility and ruled it out as a potential avenue under which plaintiff might have been required to exhaust her administrative remedies. The court recognized the existence of case law requiring a plaintiff bringing a claim against a federal employer to exhaust his or her administrative remedies even for a § 504 claim brought under § 505(a)(2) for which, under the plain language of the statute, the Title VI enforcement scheme should apply and its attendant lack

5

of an exhaustion requirement should apply. The school district relies on the reasoning set forth in this line of cases in asking the court to imply an exhaustion requirement to **all** employment cases asserting a §504 violation under § 505(a)(2), even those against recipients of federal funding. Leaving aside the fact that this argument finds no support in the statutory text (§ 505(a)(2) clearly references the Title VI enforcement scheme without making any distinction between employment or non-employment cases), the reasoning set forth in the line of cases involving federal employers simply does not apply with equal force to cases involving recipients of federal funding.

The reasoning of this rule of law was best explained in the oft-cited opinion of *McGuinness v. United States Postal Service*, 744 F.2d 1318 (7th Cir. 1984). In *McGuinness*, a federal employee who had not exhausted his administrative remedies argued his suit was not one under §§ 501, 505(a)(1), but rather under §§ 504, 505(a)(2), and therefore he was not required to exhaust his administrative remedies. In rejecting this argument, Judge Posner explained: "[I]t would make no sense for Congress to provide (and in the very same section-§505(a)) different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer; and there is no indication that Congress wanted to do this . . . ." *Id.* at 1321; *see also Spence v. Straw*, 54 F.3d 196, 201 (3d Cir. 1995) (adopting the same rule of law based on Judge Posner's reasoning in *McGuinness*); *Doe v. Garrett*, 903 F.2d 1455, 1460 (11th Cir. 1990) (same); *Morgan v. United States Postal Service*, 798 F.2d 1162, 1165 (8th Cir. 1986) (same; "It seems unlikely that Congress would have enacted two statutes under which claims could be brought against the federal

government, but only required exhaustion for one of them. To avoid administrative remedies simply by artful pleading is not a desirable result."); *cf. Prewitt v. United States Postal Service*, 662 F.2d 292, 302-04 (5th Cir. 1981) (same, but based on Congress's intent in enacting the 1978 amendments to the Rehabilitation Act). Unlike that line of cases, here the school district is not a federal employer. Consequently, plaintiff could not assert a § 501 claim against the school district that would be subject to the exhaustion requirement set forth in § 505(a)(1). Thus, it cannot be said that she is attempting to circumvent that exhaustion requirement by asserting a § 504 claim under § 505(a)(2). Because there is only one remedial scheme available to her under the Rehabilitation Act, there is nothing incongruous about allowing her to pursue a claim under § 505(a)(2) rather than some other provision of the Act that imposes an exhaustion requirement. Simply put, this is not a case in which plaintiff is attempting to avoid an exhaustion requirement by artful pleading.

The Courts of Appeal that have been confronted with this issue in the context of an employment case have uniformly rejected, either expressly or implicitly, the same argument advanced by the school district here—that is, that the exhaustion requirement applicable to federal employees should apply in all employment cases. For example, in *Freed v. Consolidated Rail Corp.*, 201 F.3d 188 (3d Cir. 2000), the Third Circuit held that the district court committed reversible error by imposing such a requirement in a case against a recipient of federal funding. *Id.* at 191-94. In so holding, the Third Circuit distinguished *Spence* (a case cited above involving a § 504 claim against a federal employer) on the basis that the plaintiff in *Freed*, unlike the plaintiff in *Spence*, did not have the option of suing under § 501.

*Id.* at 192. The Court remarked that "[w]e know of no precedent, in this court or elsewhere, that imposes such a requirement." *Id.*; *see also Tuck v. HCA Health Servs. of Tenn., Inc.*, 7 F.3d 465, 470-71 (6th Cir. 1993) (rejecting the argument that the exhaustion requirement that applies to federal employees should apply to all employees); *Smith v. Barton*, 914 F.2d 1330, 1338 (9th Cir. 1990) (holding plaintiffs asserting a § 504 claim against their former employer did not need to exhaust administrative remedies); *cf. Brennan v. King*, 139 F.3d 258, 268 n.12 (1st Cir. 1998) (noting that the Rehabilitation Act did not require exhaustion of the plaintiff's claim against his federally funded employer, although in that case the plaintiff had exhausted his administrative remedies in any event).

The school district also contends that plaintiffs should not be permitted to "statute shop" by selectively basing claims on statutes that do not require exhaustion of administrative remedies in order to avoid that requirement. In this respect, the school district contends that plaintiff should not be able to pursue a claim under § 504 of the Rehabilitation Act because the Americans with Disabilities Act (ADA) provides remedies for a non-disabled plaintiff seeking to sue his or her employer for retaliation for opposing an unlawful practice toward disabled students. The court rejects this argument, first, because the school district could have, but did not, raise this argument in its motion for summary judgment and therefore this argument does not provide appropriate grounds for reconsideration. A fairly cursory review of the statutory language of the Rehabilitation Act along with related appellate-level case law would have revealed the distinction between the fact that the exhaustion requirement applies to claims against federal employers, on the one hand, and,

8

on the other hand, that it does not apply to § 505(a)(2) claims against recipients of federal funding such as the school district. Consequently, the school district should have known, or at least suspected, that there was a significant risk the court would rule plaintiff was not required to exhaust her administrative remedies by virtue of any provision contained in the Rehabilitation Act. Therefore, if the school district was going to advance an argument relying on some other statutory exhaustion requirement (such as the ADA), the school district should have advanced that argument previously in connection with its motion for summary judgment. A motion to reconsider is not an opportunity to rehash previously rejected arguments or to offer new legal theories or facts. *Theno v. Tonganoxie Unified Sch. Dist. No. 464*, 377 F. Supp. 2d 952, 976 (D. Kan. 2005). It is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed. *Id.*

Although the school district did not advance this argument in the first instance, the court nonetheless notes that it is also unpersuaded by the merits of the argument itself. The first aspect of the school district's argument in reliance on the ADA is that *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005), in which the Supreme Court held that a plaintiff could assert a third-party retaliation claim for sex discrimination under Title IX, is distinguishable because the teacher asserting the claim in *Jackson* did not have any other statute upon which he could rely to remedy the alleged wrong because the Title VII analog applies only in circumstances where the employee opposed his employer's *employment* practice. Thus, the school district argues, the court in *Jackson* was not faced with construing Title IX consistently with another applicable statute that plainly requires exhaustion of

administrative remedies. The school district argues that this case is distinguishable and that the court should rule plaintiff cannot pursue a claim under § 504 of the Rehabilitation Act because the ADA, which contains an exhaustion requirement, provides remedies for a non-disabled plaintiff seeking to sue his or her employer for retaliation for opposing an unlawful practice toward disabled students.

Significantly, however, the school district has not directed the court's attention to (and this court has not located any) persuasive reasoning or case law which would support such a view. Although the school district has made a cursory reference to the ADA's anti-retaliation provision, *see* 42 U.S.C. § 12203(a), the remainder of its argument is a broad-brush reference to the ADA. The school district has not directed the court's attention to any substantive provision(s) of the ADA or any case law to establish that the nature of the claim plaintiff is asserting in this case would be a viable one under the ADA. While the court certainly understands the school district's attempt to distinguish the Supreme Court's holding in *Jackson*, its creative argument in this respect is simply unpersuasive given the clarity of the Supreme Court's holding in *Jackson* as well as the synonymous purposes of Title IX and the Rehabilitation Act. *See Ryan v. Shawnee Mission U.S.D. 512*, 416 F. Supp. 2d 1090, 1095-96 (D. Kan. 2006) (denying the school district's motion to dismiss plaintiff's Rehabilitation Act claim).

The school district also relies on § 504(d) of the Rehabilitation Act, which provides that in employment discrimination cases alleging violations of the Rehabilitation Act, "[t]he standards used to determine whether this section [of the Rehabilitation Act] has been violated

. . . shall be the standards applied under title I of the Americans with Disabilities Act." 29 U.S.C. § 794(d). The school district once again, however, has not established how its alleged conduct would have formed the basis for a viable claim under Title I of the ADA. In fact, the substantive nondiscrimination provision in Title I of the ADA generally prohibits discrimination against "a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Here, although plaintiff alleges she suffered discrimination in the terms and conditions of her employment, she is not herself a qualified individual with a disability and therefore does not fall within the scope of this provision. Similarly, although her disabled students may be "qualified individual[s] with . . . disabilit[ies]," plaintiff is not asserting that the school district discriminated against them with respect to the terms and conditions of their employment. Because the nature of the alleged discrimination in this case does not form the basis for a substantive violation of Title I the ADA, then, it could not form the basis for a retaliation claim to which the substantive standards of the ADA would apply under § 504(d) of the Rehabilitation Act.

Even if plaintiff could state a viable claim under the ADA, the court is unpersuaded that § 504(d) of the Rehabilitation Act incorporates the ADA's exhaustion requirement. This provision of the Rehabilitation Act effectively incorporates ADA standards into the Rehabilitation Act in employment discrimination cases, *Woodman v. Runyon*, 132 F.3d 1330, 1339 (10th Cir. 1997), but it "addresses *only* the substantive standards for determining *what* conduct violates the Rehabilitation Act," *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968,

11

972 (10th Cir. 2002) (first emphasis added; second emphasis in original). For example, ADA standards apply to determining whether a person is "disabled" within the meaning of the Rehabilitation Act, *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (applying the ADA's more expansive definition of the term "disability" to a Rehabilitation Act claim), but not to determining whether a particular entity is subject to the Rehabilitation Act, *Schrader*, 296 F.3d at 972-75 (holding the ADA's restriction limiting liability only to employers with fifteen or more employees does not apply under the Rehabilitation Act). Here, the school district is not asking the court to apply the ADA's substantive standards in determining whether a violation has occurred, but instead is asking the court to apply the ADA's remedial scheme and its exhaustion of administrative remedies requirement. In *Freed*, the Third Circuit rejected a similar argument in a case (like this one) involving a claim only under the Rehabilitation Act and not the ADA. 201 F.3d at 192 (noting the plaintiff had withdrawn her ADA claim and therefore the court was "presented with the narrow issue whether a plaintiff suing solely under section 504 must exhaust" administrative remedies).[3] The Third Circuit reasoned that although the ADA and Rehabilitation Act contain provisions designed to achieve substantive conformity, *see* 42 U.S.C. § 12117(b); 29 U.S.C. § 791(g), "[n]othing in these provisions addresses an exhaustion requirement." *Id.* at 194. The court explained that where Congress has wanted to coordinate statutes in that way it has done so

---

[3] The result might be different if plaintiff were also asserting an ADA claim for which exhaustion were required, but in this case she is not.

12

expressly, referring to the IDEA exhaustion statute, 20 U.S.C. § 1415(ℓ).[4]  *Id.*  The Third Circuit's reasoning on this issue is sound, persuasive, and the court has no reason to believe the Tenth Circuit would adopt a different approach.

This court simply does not find any principled basis to impose the ADA's exhaustion requirement on a Rehabilitation Act claim against a recipient of federal funding where the applicable statute clearly states that the claim is subject to the procedures set forth in Title VI, 29 U.S.C. § 794a(a)(2), and the Tenth Circuit as well as the other Courts of Appeal have held that exhaustion of administrative remedies it not a prerequisite to suit under that statute, *see Ryan v. Shawnee Mission Unified Sch. Dist. No. 512*, No. 05-2213, 2006 WL 1888326, at *20 (D. Kan. July 7, 2006) (citing *Pushkin v. Regents of Univ. of Colo*, 658 F.2d 1372, 1380-82 (10th Cir. 1981), and other cases).  This is particularly so where the school district's argument would essentially bar plaintiff's claims, thus affording her lesser relief than that to which she would be entitled under the Rehabilitation Act alone.  Construing the statute in such a manner would be contrary to legislative history.  *See Schrader*, 296 F.3d at 973 (noting that § 504(d) was intended to bring the Rehabilitation Act in line with the newly-passed ADA, but that "Congress did not wish to water down the goals of the Rehabilitation Act to achieve this goal").

In conclusion, the court has given careful and thorough consideration to the issue of whether plaintiff was required to exhaust her administrative remedies on her Rehabilitation

---

[4] The court previously discussed the IDEA exhaustion statute in its order denying the school district's motion for summary judgment on this issue.

13

Act claim. The school district's argument on this issue in its original motion for summary judgment was fairly cursory, as the school district apparently did not realize that the applicable remedial scheme depends on whether the defendant is a federal employer or a federal funding recipient. Having failed to recognize this threshold issue, then, the school district also apparently did not realize the various arguments that could be raised based on the interplay between related statutes. In the school district's motion for reconsideration it has largely advanced arguments that it could have and should have raised in its motion for summary judgment. It is not entitled to a second bite at the apple. On this basis alone, the school district's motion is denied. Additionally, it is denied on its merits for the reasons stated above.

**B.     Adverse Employment Action**

Lastly, the school district asks the court to reconsider the aspect of its order denying summary judgment on plaintiff's Rehabilitation Act claim in which the court held that the school district did not meet its initial summary judgment burden of demonstrating the absence of a genuine issue of material fact concerning whether plaintiff suffered adverse employment action. In so holding, the court noted that the parties did not present meaningful argument on this issue with respect to plaintiff's Rehabilitation Act claim, referring instead to their discussion of adverse employment action in connection with plaintiff's First Amendment retaliation claim. The court noted that it would "not presume that the two standards are synonymous." *Ryan*, 2006 WL 1888326, at *23. The court further noted that

14

it would not consider the arguments on this issue which the school district raised for the first time in its reply brief.

The school district now states that it wants the court to acknowledge that it did argue the adverse employment action prong of plaintiff's Rehabilitation Act retaliation claim and analyzed the issue using the proper standard. In response, plaintiff points out that the school district incorrectly cited to Title VII case law for finding adverse employment action as to why it was entitled to summary judgment on plaintiff's § 1983 free speech claim, then incorporated this argument into the section of its brief as to why it was entitled to summary judgment on this element of plaintiff's Rehabilitation Act claim. The legal standards for finding an adverse employment action under Title VII and § 1983 are not the same. *Maestas v. Segura*, 416 F.3d 1182, 1188 n.5 (10th Cir. 2005) (noting that some forms of retaliation may be actionable under the First Amendment while insufficient to support a discrimination claim under Title VII). Consequently, to the extent that the school district relied on Title VII case law on plaintiff's § 1983 claim, it applied the incorrect standard. When the school district incorporated that argument into the aspect of its motion for summary judgment on plaintiff's Rehabilitation Act claim, the court simply noted that the two legal standards were not synonymous and therefore the school district had not met its initial summary judgment burden of demonstrating the absence of a genuine issue of material fact on this issue.

In addition to the fact that it did not appear to the court that the school district had applied the correct legal standard on this issue, another reason the court did not delve too deeply into this issue in connection with the school district's original motion for summary

15

judgment was because intervening case law had changed the applicable legal standard such that the parties' briefing on this element was obsolete by the time the court issued its opinion and, under this new legal standard, any suggestion that the facts did not present a genuine issue of material fact on this element would have been (as it is now) wholly without merit. As mentioned previously, in employment discrimination cases alleging violations of the Rehabilitation Act, the court generally applies ADA standards. 29 U.S.C. § 794(d); *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004); *Schrader v. Fred A. Ray, M.D., P.C.*, 296 F.3d 968, 972 (10th Cir. 2002). The court, in turn, generally applies the same standards to ADA claims as it applies to Title VII claims. *Lanman v. Johnson County*, 393 F.3d 1151, 1155-56 (10th Cir. 2004). On June 22, 2006, the Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405 (2006), rejected the notion that a prima facie case of retaliation under Title VII requires an "adverse employment action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 & n.2 (10th Cir. 2006); *see also Scott v. Kempthrone*, No. 04-8043, 2006 WL 1980219, at *3 n.3 (10th Cir. July 17, 2006) (pointing out that under *Burlington* "adverse employment action" is no longer the correct standard for a retaliation claim). Now, in order for employment action to constitute actionable retaliation, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 126 S. Ct. at 2415 (quotations omitted); *see also Argo*, 452 F.3d at 1202 (new standard under *Burlington* is whether "a reasonable employee would have

16

found the challenged action materially adverse"); *Haynes v. Level 3 Commc'ns, LLC*, No. 04-1307, slip op. at 22 (10th Cir. Aug. 8, 2006) (same). Although trivial harms such as "petty slights or minor annoyances" are not actionable, the Supreme Court crafted this new standard in "general terms because the significance of any given act of retaliation will often depend on the circumstances." *Burlington*, 126 S. Ct. at 2415. The social impact of a challenged action depends "on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.* (quotation omitted). "[A]n act that would be immaterial in some situations is material in others." *Id.* at 2416 (same). The court must focus on the "materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position" so as to "screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination." *Id.*

Under this standard, the summary judgment record reflects a genuine issue of material fact concerning whether a reasonable employee in plaintiff's situation would have found the removal from being assigned to M.J.'s case at Rosehill Elementary to be materially adverse. A rational trier of fact could find that the school district's removal of plaintiff from M.J.'s case was significant because M.J.'s case was a particularly challenging one that was well known within the special education department, and that removal of a physical therapist from such a case mid-year was sufficiently unusual that the associated professional stigmatism would have dissuaded a reasonable worker from making similar complaints. Taken in

17

context, a reasonable employee could find this action was materially adverse. *See, e.g.*, *Burlington*, 126 S. Ct. at 2416-17 (holding the jury's finding that a reassignment of job responsibilities constituted a materially adverse change in the terms and conditions of employment was adequately supported by the evidence); *see also Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 904 (7th Cir. 2005) (materially adverse change might be indicated by, among other things, significantly diminished material responsibilities).[5] Additionally, a rational trier of fact could conclude that Ms. Hansen's comments to plaintiff during their meeting on May 5, 2004, constituted materially adverse action. Accepting plaintiff's version of events as true, as the court must on a motion for summary judgment, Ms. Hansen told plaintiff that none of the schools to which plaintiff had been assigned wanted her back, that she would not allow plaintiff to switch schools, that all of the other physical therapists had asked for plaintiff's removal, that if plaintiff did not resign by May 15th the school district would enforce the $1,000 penalty for late resignations against her, and that the school district no longer wanted plaintiff back and no longer had a position for her. A rational trier of fact could find that a reasonable employee who was forced to resign in such a manner would have been dissuaded from making comments like those plaintiff made about disabled students getting shortchanged under their IEPs. *Cf. Preston v. Texas Dep't of Family & Protective Servs.*, No. 05-0334, 2006 WL 2331054, at *5 (S.D. Tex. Aug. 9, 2006) (two written

---

[5] The court cites Seventh Circuit precedent here because, in *Burlington*, the Supreme Court adopted the standards previously applied by the Seventh and the District of Columbia Circuits in determining whether challenged action constitutes actionable retaliation.

admonishments and termination constituted materially adverse employment actions under *Burlington*). Certainly, a reasonable worker in plaintiff's situation would not have regarded Ms. Hansen's comments during the May 5th meeting as trivial conduct, petty slights, or minor annoyances. Accordingly, the school district's motion for reconsideration of the court's ruling on this element of plaintiff's Rehabilitation Act claim is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that the school district's motion for reconsideration (doc. #103) is denied.

**IT IS SO ORDERED** this 25th day of August, 2006.

                                            s/ John W. Lungstrum
                                            John W. Lungstrum
                                            United States District Judge